# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| iBALL INSTRUMENTS, LLC, | ) | |
| an Oklahoma limited liability company, | ) | |
| | ) | |
|        Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-00778-JD |
| | ) | |
| MYRON BUTLER; MARK ROBERT | ) | |
| DAVIS; DAVID E. MOORE; TOC | ) | |
| SOLUTIONS, INC., an Oklahoma | ) | |
| corporation; TELECOMM | ) | |
| CONSULTANTS, INC., an Oklahoma | ) | |
| corporation; and TOC RURAL | ) | |
| SOLUTIONS, LLC, an Oklahoma | ) | |
| limited liability company, | ) | |
| | ) | |
|        Defendants. | ) | |

## ORDER

Before the Court is Defendants' Motion to Dismiss First Amended Complaint ("Motion"). [Doc. No. 23]. Plaintiff iBall Instruments, LLC ("iBall") filed a response in opposition ("Response") [Doc. No. 25]; Defendants filed a reply ("Reply") [Doc. No. 26]; and iBall, with leave of Court, filed a surreply ("Surreply") [Doc. No. 31].

Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss iBall's Defend Trade Secrets Act ("DTSA") claim (Count 1) for failure to state a claim upon which relief can be granted, asserting that the applicable statute of limitations bars iBall's claim. Additionally, Defendants move under Federal Rule of Civil Procedure 12(b)(1) to dismiss iBall's correction of inventorship claims (Counts 2, 3, and 4), contending that iBall lacks standing to pursue such claims. Defendants also move to

dismiss under Rule 12(b)(1) iBall's invalidity of patent claim (Count 5), asserting that iBall fails to establish a case or controversy sufficient to confer Article III standing regardless of how the claim is styled. Finally, Defendants ask the Court to decline to exercise supplemental jurisdiction over iBall's remaining state law claims for breach of contract and unjust enrichment (Counts 6 and 7).

Upon its review and consideration, the Court grants the Motion.

## I.   <u>OVERVIEW</u>

### A.   Procedural History

iBall initially filed this action against Defendants Myron Butler, Mark Robert Davis, David E. Moore, TOC Solutions, Inc., Telecomm Consultants, Inc. ("TCI"), and TOC Rural Solutions, LLC on August 9, 2021. [Doc. No. 1]. iBall sought declaratory judgment of invalidity or corrected ownership of a patent related to a TocBox Device and asserted a *Walker Process*[1] antitrust claim and DTSA claim. [Doc. No. 1].

Defendants challenged the original complaint on a motion to dismiss [Doc. No. 16], asserting that iBall's claim of invalidity failed to establish a case or controversy, that iBall's *Walker Process* claim failed to state a claim upon which relief could be granted, that iBall's DTSA claim was barred by the 3-year statute of limitations, that iBall lacked

---

[1] *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 173–74 (1965) (concluding that a plaintiff could bring an action under § 2 of the Sherman Act, 15 U.S.C. § 2, based on the alleged maintenance and enforcement of a fraudulently obtained patent).

standing to pursue a claim for correction of inventorship, and that the Court lacked

subject-matter jurisdiction over iBall's declaratory judgment claim of ownership.

The Court ordered the parties to confer regarding the issues raised in the motion to

dismiss and for iBall to determine if it could cure any of the alleged pleading defects by

filing an amended complaint. [Doc. No. 17]. The parties conferred, and iBall filed an

unopposed motion to extend the time to file an amended complaint [Doc. No. 18], which

the Court granted [Doc. No. 19]. iBall filed the operative complaint, the First Amended

Complaint ("FAC") on October 13, 2021. [Doc. No. 20].

The FAC alleges claims for violations of the DTSA (Count 1), correction of

inventorship for the '301 Provisional Patent Application (Count 2), correction of

inventorship for the '820 Utility Application and United States Patent No. 10,187,501

(the "'501 Patent") (Count 3), correction of inventorship for the '921 Continuation

Application (Count 4), invalidity of the '501 Patent (Count 5), breach of contract (Count

6), and unjust enrichment (Count 7).

## B.    Factual Background[2]

Carl Bright is the majority member and manager of iBall. FAC ¶ 1. Defendants

Butler, Davis, and Moore were contracted or employed by iBall as early as June 2012 to

---

[2] The Court recounts the facts based on the well-pled factual allegations in the
FAC and construes them in the light most favorable to iBall. *See Ridge at Red Hawk,
L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (explaining that the court must
"assume the truth of the plaintiff's well-pleaded factual allegations"). To the extent that
iBall asserts additional facts in its briefing, the Court disregards such allegations. iBall
cannot amend or add to its allegations through its briefing, and the Court does not allow it
here. *See* Fed. R. Civ. P. 7(b); *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771

update the digital communications system in iBall's Bloodhound gas detection device to make it capable of 3G network connectivity. *Id.* ¶¶ 14, 30. Defendants allegedly appropriated iBall's Bloodhound Communications Trade Secrets to develop a modified device, adding a telephone interface and handset, and marketed it as their own device. *Id.* ¶¶ 14, 17, 30. Defendants named their device the TocBox Device. *Id.* ¶ 14.

In November 2013, Defendants filed the '301 Provisional Patent Application with the United States Patent and Trademark Office ("USPTO") for the TocBox Device. *Id.* ¶ 19. iBall alleges that the '301 Provisional Patent Application disclosed and claimed the communications portion of iBall's Bloodhound. *See id.*

Also in November 2013, Bright and iBall initiated suit against Aaron Butler, Myron Butler, Davis, and TOC Solutions, Inc., in Pottawatomie County District Court. *See* Pottawatomie County District Court Case No. CJ-2013-00451.[3] Bright and iBall filed

---

F.3d 697, 706 (10th Cir. 2014) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999))). *See also Earles v. Cleveland*, 418 F. Supp. 3d 879, 892 n.3 (W.D. Okla. 2019), *aff'd*, 825 F. App'x 544 (10th Cir. 2020) (unpublished) (disregarding factual allegations in the plaintiff's response brief that were beyond the scope of her complaint because a plaintiff may not effectively amend a complaint by alleging new facts in a response to a motion to dismiss).

[3] The Court takes judicial notice of the docket report on the Oklahoma State Courts Network, available at http://www.oscn.net, and the public filings in Pottawatomie County District Court Case No. CJ-2013-00451, some of which are attached to the Motion. *See* [Doc. Nos. 23-1 and 23-2]. In analyzing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court may consider documents that the complaint incorporates by reference, documents referred to in the complaint that are central to the plaintiff's claims and as to which the parties do not dispute authenticity, and matters of which the Court may take judicial notice. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th

a First Amended Petition ("FAP") in that action on May 5, 2014, asserting, inter alia, claims for misappropriation of trade secrets under Oklahoma's Uniform Trade Secrets Act ("OUTSA"), Okla. Stat. tit. 78, § 85, et seq., and common law. [Doc. No. 23-1 at 4–5].[4] The FAP alleged that Davis, Aaron Butler, and Myron Butler formed TOC Solutions, Inc., on September 30, 2013, a company "actively competing with iBall and soliciting iBall's customers by its efforts to sell a 'tocbox,'"—a device "developed and enhanced using iBall's property, both tangible and intangible." FAP ¶ 18. Additionally, the FAP alleged that Davis filed a trademark application for the "tocbox" on December 31, 2013, "despite the fact that the device was developed and enhanced using iBall's property, both tangible and intangible." *See id.*

In November 2014, Defendants filed the '820 Utility Application, claiming benefit of the earlier filing date of the '301 Provisional Patent Application. FAC ¶ 20. The '820 Utility Application ultimately led to issuance of the '501 Patent. *See id.* iBall alleges that the '501 Patent disclosure includes the entirety of the '301 Provisional Patent Application, along with communications boards for connectivity to multiple cellular network carriers. *See id.*

---

Cir. 2010); *see also United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (explaining that courts may take judicial notice of publicly filed records from other courts concerning matters that bear directly upon the disposition of the case at hand). Additionally, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[4] The Court uses CM/ECF page numbering from the top of docket filings in this Order.

On July 19, 2018, Bright and iBall filed a Second Amended Petition ("SAP") [Doc. No. 23-2] in Pottawatomie County District Court, Case No. CJ-2013-00451, asserting, inter alia, a claim for misappropriation of trade secrets under OUTSA. SAP ¶¶ 41–42. The SAP alleged that Myron Butler, Davis, Moore, and TCI "conceptualized and designed the 'tocbox' device and like devices ('TocBox') utilizing iBall's intellectual property before the signing of the Settlement Agreement,"[5] and that "[Myron] Butler, TCI, and Davis failed to disclose or turn over the TocBox concept, designs, or assets to iBall prior to the closing of the Settlement Agreement." *Id.* ¶ 22. Additionally, the SAP alleged that Myron Butler, Davis, and TCI applied for a patent for the TocBox with the USPTO, and that Moore, Davis, and TOC had applied for a trademark for the TocBox with the USPTO. *Id.* ¶ 28. The SAP also alleged that TOC was currently selling and renting the TocBox to its customers, many of whom were also iBall customers. *Id.* ¶ 29.

On January 18, 2019, Defendants filed the '921 Continuation Application with the USPTO. FAC ¶¶ 21, 55. The '501 Patent issued on January 22, 2019, and stemmed from the '820 Utility Application and the '301 Provisional Patent Application. *Id.* ¶ 58. The '501 Patent identifies Defendants Butler and Davis as the sole co-applicants and co-

---

[5] The Settlement Agreement was reached in a separate state court action in Pottawatomie County District Court Case No. CJ-2011-00002, which was an action filed by Bright against Myron Butler and others to determine the relative ownership of iBall and its property. FAC ¶ 25 n.1. The FAC alleges that as early as January 2013, while employed by or in contract with iBall, Butler offered to sell the TocBox, and that Defendants Butler, Davis, and TCI "conspired to construct the first TocBox Device long before they executed the iBall Settlement Agreement in June of 2013." *Id.* ¶¶ 33, 35, 37. The FAC indicates the "parties closed" on the Settlement Agreement on July 13, 2013. *Id.* ¶ 39.

inventors of the Bloodhound Communications Trade Secrets that Defendants allegedly

stole from iBall. *Id.* ¶ 59. iBall asserts that the "'501 Patent and allowed continuation

claims are fruit from the poisonous tree of their misappropriation of iBall's Bloodhound

Trade Secrets and fraud on the USPTO." *Id.* ¶ 24.

iBall alleges that Defendants' "misappropriation by improper disclosure first

occurred with issuance of the '501 Patent on January 22, 2019, after enactment of the

[DTSA] on May 11, 2016." *Id.* ¶ 73.

## II.   <u>ANALYSIS</u>

### A.   **iBall's DTSA Claim (Count 1)**

#### *(1)   The Statute of Limitations and Standard of Review for Rule 12(b)(6) Motions*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). Although a complaint does not need detailed factual assertions, a pleading that

offers only "labels and conclusions" or "pleads facts that are merely consistent with a

defendant's liability" will not suffice. *Id.* (internal quotation marks and citations omitted).

The burden is on the plaintiff to plead factual allegations that "raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555.

Under this standard, the Court accepts all well-pled factual allegations as true and

views the allegations in the light most favorable to the nonmovant. *Peterson v. Grisham*,

594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in its complaint, but the elements of each cause of action help to determine whether the plaintiff has set forth a plausible claim. *Id.* at 1192. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted).

Although the statute of limitations bar is an affirmative defense, it may be "'resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022) (quoting *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016)); *see Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010) (unpublished) (same); *see also Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("Statute of limitations questions may, therefore, be appropriately resolved on a Fed. R. Civ. P. 12(b) motion."). If the allegations of a complaint "'show that relief is barred by the applicable statute[] of limitations, the complaint is subject to dismissal for failure to state a claim.'" *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1096–97 (10th Cir. 2009) (alteration added) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)). This is so because "any party claiming the benefit of equitable tolling of a limitations period . . . [bears] the burden of proving justifiable

8

circumstances." *Olson v. Fed. Mine Safety & Health Review Comm'n*, 381 F.3d 1007,

1014 (10th Cir. 2004) (citing cases).

### (2)     Application to iBall's DTSA Claim

Congress provides a 3-year statute of limitations for iBall's DTSA claim under 18

U.S.C. § 1836(d). Section 1836(d) states as follows:

> A civil action under subsection (b) [for private civil actions] may not be
> commenced later than 3 years after the date on which the misappropriation
> with respect to which the action would relate is discovered or by the
> exercise of reasonable diligence should have been discovered. For purposes
> of this subsection, a continuing misappropriation constitutes a single claim
> of misappropriation.

18 U.S.C. § 1836(d).

Defendants assert that the 3-year statute of limitations bars iBall's DTSA claim

because iBall "first accused" Defendants of misappropriating iBall's trade secrets in the

state court action in the FAP filed on May 5, 2014, and reasserted a misappropriation

claim under OUTSA in its SAP filed on July 19, 2018. Motion at 13–14. Defendants

assert that the definition of a "trade secret" under OUTSA and the DTSA "are nearly

identical" and that iBall "could have brought its DTSA claim on May 11, 2016, the day

the DTSA was enacted." *See id.* at 14.

In response, iBall asserts that "the trade secret information improperly disclosed in

2019 is different than the trade secret information improperly acquired and used in 2013."

Response at 11. It contends that its DTSA claim is based on the issuance of Defendants'

'501 Patent on January 22, 2019, which "constitutes misappropriation by improper public

disclosure of iBall's valuable trade secrets under the DTSA." *See id.* at 10. iBall asserts

that Defendants' 2019 public disclosure extinguished iBall's trade secrets and enabled third parties to compete against iBall. *See id.* at 11. In other words, iBall asserts "that the 2019 public disclosure constitutes a separate claim from the 2013 acquisition and use." *See id.* at 13. iBall contends that Defendants' arguments for a single claim view improperly "blur the past allegations of acquisition and use with the present allegations of disclosure." *See id.* at 14. Finally, iBall maintains that its attempted, but unsuccessful, investigation of Defendants' "secret patent filings" tolls the statute of limitations period until the '501 Patent issued on January 22, 2019. *See id.* at 16.

In reply, Defendants concur that misappropriation under the DTSA can occur through acquisition, disclosure, or use, and that the "misappropriation of one trade secret does not trigger the statute of limitations with respect to a different trade secret." Reply at 2. However, Defendants assert that the allegations in the FAC do not differentiate between trade secrets in 2013 and 2019, and that iBall's attempt to "recategorize the trade secrets at issue . . . is nothing more than an attempt to establish a distinction where none exists." *See id.* at 3. To that end, Defendants assert that iBall may not use the Response "to bolster" its allegations in the FAC or "to cite facts that have not been pled." *See id.*

Defendants also contend that iBall's arguments are inconsistent with the plain language of the DTSA and the single claim view of misappropriation adopted by the Sixth Circuit in *B&P Littleford, LLC v. Prescott Machinery, LLC*, Nos. 20-1449/1451, 2021 WL 3732313 (6th Cir. Aug. 24, 2021) (unpublished). *See* Reply at 4. Finally, Defendants assert that iBall's tolling argument is directly refuted by iBall's allegations in

this action and in the state court action, and that there are no allegations of an investigation by iBall in the FAC. *See id.*

In surreply, iBall contends that the Court "can draw a reasonable inference that Defendants are liable for a claim of misappropriation arising from their 2019 public disclosure of iBall's valuable trade secrets" from the allegations in the FAC. Surreply at 4–5. With respect to its tolling argument, iBall insists that the Court should not be concerned with the sufficiency of iBall's investigation of Defendants' patent filings at this stage of the proceedings; that its motion for summary judgment filed in the state court action in 2017 does not trigger the statute of limitations period; and that there is "no single fact before this Court demonstrating any actual public disclosure of, or any concrete notice to iBall of Defendants' intent for public disclosure" prior to 2019. *See id.* at 6–7.

Accepting the well-pled factual allegations in iBall's FAC as true and gleaning relevant dates by taking judicial notice,[6] the Court concludes that iBall's DTSA claim first accrued no later than July 19, 2018. This is the date iBall filed its SAP in the state court action asserting misappropriation of trade secrets under OUTSA and alleging that Defendants had "conceptualized and designed the 'toc box' device and like devices ('TocBox') utilizing iBall's intellectual property"; had applied for a patent and trademark for the TocBox with the USPTO; and were currently selling the TocBox to their

---

[6] *See Wei v. Univ. of Wyo. Coll. of Health Sch. Pharmacy*, 759 F. App'x 735, 740 (10th Cir. 2019) (unpublished) (quoting *Warnick v. Cooley*, 895 F.3d 746, 754 n.6 (10th Cir. 2018)) (explaining that the court may glean relevant dates by considering "'matters of which a court may take judicial notice'").

customers, many of whom were also iBall's customers. SAP ¶¶ 22, 28–29, 41–42. That date is 3 years and 21 days before the filing of the instant federal action on August 9, 2021, and is after the enactment of the DTSA on May 11, 2016, which renders iBall's DTSA claim time barred. The allegations in the FAC and relevant dates gleaned "make clear" that iBall was aware in July 2018 that Defendants had acquired and used iBall's trade secrets to develop the TocBox Device, that they had applied for a patent for the TocBox Device, and that they were currently selling the TocBox Device.

OUTSA's definitions of "trade secret" and "misappropriation" "are nearly identical to" the definitions in the DTSA. *See Okla. Land Holdings, LLC v. BMR II, LLC*, Case No. CIV-17-1036-D, 2020 WL 4284806, at *12–13 (W.D. Okla. July 27, 2020) (citing *ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1200 (W.D. Okla. 2019) (noting that the OUTSA's definition of a trade secret "largely mimics" the DTSA's definition of a trade secret); *Video Gaming Techs., Inc. v. Castle Hill Studios LLC*, Case No. 17-CV-454-GKF-JFJ, 2018 WL 3437083, at *7 (N.D. Okla. July 17, 2018); *Blue Star Land Servs., LLC v. Coleman*, Case No. CIV-17-931-R, 2017 WL 6210901, at *7 (W.D. Okla. Dec. 8, 2017) (acknowledging that the OUTSA's definitions of "trade secrets" and "misappropriation" "are nearly identical to the DTSA," although an OUTSA plaintiff must also show "use" and "detriment")); *compare* 18 U.S.C. § 1839(3) (trade secret), *with* Okla. Stat. tit. 78, § 86(4) (trade secret); *also compare* 18 U.S.C. § 1839(5) (misappropriation), *with* Okla. Stat. tit. 78, § 86(2) (misappropriation). Thus, misappropriation is defined broadly as "the acquisition,

disclosure or use of a trade secret with knowledge or reason to know it is unauthorized."[7]

*See Balfour Beatty Infrastructure Inc. v. Am. Track Generations LLC*, Case No. 19-CV-249-F, 2020 WL 13049359, at *4 (D. Wyo. June 22, 2020) (citing 18 U.S.C. § 1839(5)).

Although iBall argues that the 2019 public disclosure is a separate claim from the 2013 acquisition and use, it is clear from the face of the FAC that the trade secret allegedly misappropriated is the same in both instances, i.e., iBall's Bloodhound Communications Trade Secrets used by Defendants to develop the TocBox Device. iBall even alleges that the "'501 Patent . . . [is] fruit from the poisonous tree of [Defendants'] misappropriation of iBall's Bloodhound Trade Secrets . . . ." FAC ¶ 24. In other words, the allegations in the FAC make no distinction between trade secrets used and acquired in 2013 and trade secrets disclosed in 2019.

Additionally, under the plain text of the DTSA, "a continuing misappropriation constitutes a single claim." 18 U.S.C. § 1836(d). The DTSA, passed in 2016, is modeled after the Uniform Trade Secrets Act ("UTSA"). *B&P Littleford, LLC v. Prescott Mach., LLC*, Nos. 20-1449/1451, 2021 WL 3732313, *5 (6th Cir. Aug. 24, 2021) (unpublished)

---

[7] "No controlling decision in [the Tenth Circuit] identifies the specific elements of a federal DTSA claim." *John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1302 (D. Utah 2020) (noting that several district courts in the Tenth Circuit have set forth the required elements and citing cases); *API Ams. Inc. v. Miller*, 380 F. Supp. 3d 1141, 1148 n.5 (D. Kan. 2019) (explaining that because "there does not appear to be any controlling decision regarding the elements required to establish a misappropriation claim under the recently enacted DTSA," the court "looks to the decision of other district courts in [the Tenth Circuit] for guidance"). Generally, the plaintiff must show: "(1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means." *John Bean Techs.*, 480 F. Supp. 3d at 1302 (internal quotation marks and citations omitted).

(citing S. Rep. No. 114-220 (2016)). In passing the DTSA, Congress conformed its language on the limitations period to that of the UTSA. The Senate Judiciary Committee explained in its report to the Senate that the:

> [DTSA] provides a three-year period of limitations in which to bring a claim under the section. This limitations period, which was reduced from five years during the Committee's markup, is now identical to the limitations period of the UTSA, although a number of States have modified the limitations period in enacting the UTSA.

*See* S. Rep. No. 114-220, at 9–10 (2016). This language coupled with the commentary to Section 6 of the UTSA is strong evidence indicating Congress' intent to follow the UTSA's approach in rejecting the "continuing wrong approach to the statute of limitations." *See* UTSA § 6, cmt. (1985) (explaining that the UTSA "rejects a continuing wrong approach to the statute of limitations but delays the commencement of the limitation period until an aggrieved person discovers or reasonably should have discovered the existence of misappropriation").[8]

Before the UTSA, "'jurisdictions were split on whether the limitations period ran only from the initial misappropriation, or whether it was triggered anew with each act of

---

[8] The Supreme Court has recognized that in statutory interpretation, history (whether legislative or source of the text) may confirm the plain text of the statute, as it does here. *See, e.g.*, *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2262 (2024) ("The text of the [Administrative Procedure Act] means what it says. And a look at its history if anything only underscores that plain meaning.") (citing Senate and House reports on the legislation); *Sturgeon v. Frost*, 587 U.S. 28, 54 (2019) ("The legislative history (for those who consider it) confirms, with unusual clarity, all we have said so far.") (discussing Senate Report); *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 415, 416 (2017) (recognizing that, after analyzing the text of the statute, "[t]his interpretation is also consistent with the history of the Copyright Act" as "Congress essentially lifted the language . . . directly from . . . regulations" implementing a 1954 Supreme Court case).

misappropriation.'" *B&P Littleford*, 2021 WL 3732313, at *5 (quoting *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 583 (6th Cir. 2015) (citing UTSA § 6, cmt. (1985)). The different approaches "rested on the underlying rationale for punishing the misappropriation of a trade secret." *Kehoe Component*, 796 F.3d at 583. Jurisdictions that restarted the limitations period with each act of misappropriation saw misappropriation of trade secrets as damage to property. *See id.* Those that ran the limitations period from the first act of misappropriation envisioned misappropriation "as a breach of the relationship between the parties—which is not breached anew with each further use or disclosure." *B&P Littleford*, 2021 WL 3732313, at *5.

The Sixth Circuit endorses the "relationship" approach to the various iterations of the UTSA, including the DTSA. *See id.* at *6. Thus, "the first discovered (or discoverable) misappropriation of a trade secret commences the limitation period." *See id.* (internal quotation marks and citation omitted). To state another way, "although the initial wrongful acquisition of the trade secret and each subsequent misuse are separate acts of misappropriation, 'a *claim* for misappropriation arises only once . . . at the time of the initial misappropriation, subject to the discovery rule.'" *See id.* (quoting *Amalgamated Indus. Ltd. v. Tressa, Inc.*, 69 F. App'x 255, 261 (6th Cir. 2003) (unpublished) (emphasis in original)). "Each new misuse or wrongful disclosure is then viewed as augmenting a single claim of continuing misappropriation rather than as giving rise to a separate claim." *B&P Littleford*, 2021 WL 3732313, at *6 (brackets omitted) (internal quotation marks and citation omitted).

District courts within the Third, Ninth, and D.C. Circuits also follow the "relationship" approach in adopting a single claim view. *See, e.g.*, *Houser v. Feldman*, 569 F. Supp. 3d 216, 225–26 (E.D. Pa. 2021) (explaining that it is clear from its statutory text and legislative history that the DTSA adopts the "relationship school" of thought on trade secrets and the statute of limitations); *Ajenifuja v. Dangote*, 485 F. Supp. 3d 120, 127 (D.D.C. 2020) ("[T]he fact that the misappropriation was allegedly an ongoing one makes no difference because, under both acts, 'a continuing misappropriation constitutes a single claim.'") (internal citation omitted) (quoting 18 U.S.C. § 1836(d) and D.C. Code § 36-406); *Arrivia Inc. v. Rowley*, No. CV-23-01039-PHX-DLR, 2023 WL 7386384, at *5 (D. Ariz. Nov. 8, 2023) (explaining "that an initial misappropriation of trade secrets and a subsequent continuing misappropriation constitute a single claim" and noting "that states that have adopted the UTSA consistently apply a single claim theory to misappropriation of trade secrets") (internal quotation marks and citations omitted).

The Federal Circuit appears to also follow the relationship approach even with respect to allegations of misappropriation of different trade secrets. *See, e.g.*, *Maatuk v. Emerson Elec., Inc.*, 781 F. App'x 1002, 1005 (Fed. Cir. 2019) (unpublished) ("But where a party alleges misappropriation of different trade secrets years after discovery of the breach of confidentiality, the claim is barred by the statute of limitations regardless of whether the plaintiff brought an unsuccessful suit in the first instance."). The Court also finds it significant that Oklahoma has adopted the UTSA. *See Gaedeke Holdings VII Ltd. v. Baker*, 683 F. App'x 677, 684 (10th Cir. 2017) (unpublished) (citing Okla. Stat. tit. 78, § 85); *see also* Okla. Stat. tit. 78, § 91 ("An action [under the OUTSA] for

16

misappropriation must be brought within three (3) years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.").

iBall asserts that a reasonable jury could find facts pled in the record to support a separate claim from Defendants' 2019 public disclosure "because it discloses different information, to different recipients, in an intentional manner further benefitting Defendants' relationship power and intellectual property assets." Response at 15–16. iBall appears to rely on dicta in *B&P Littleford*, in which the court stated that "nothing in . . . [the] DTSA, or relevant caselaw suggests that a misappropriation of one trade secret can trigger the limitations period for a claim based on the misappropriation of a *different* trade secret." *B&P Littleford*, 2021 WL 3732313, at \*6 (emphasis in original); *see also* Response at 13.

iBall's argument, however, is directly refuted by the example proffered in *B&P Littleford*, which is *Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 796 F.3d 576 (6th Cir. 2015). In *Kehoe*, the counter plaintiff argued that the counter defendant "misappropriated new and different trade secrets each time it manufactured a new knockoff product." *See id.* at 583. The Sixth Circuit concluded that the counter plaintiff had "fail[ed] to identify what those alleged trade secrets might be," and ultimately determined that the counter plaintiff's claims were untimely under Ohio's Uniform Trade Secrets Act because they were not filed within four years of when the counter plaintiff first learned that the counter defendant was misusing the information. *See id.* at 583–84. Here, accepting the facts of the FAC as true, the trade secret underlying the 2019 patent

originated from the same trade secret at issue in the state court action, not a *different* trade secret. Thus, this is a continuing misappropriation, rather than a distinct cause of action.

To try to keep its DTSA claim alive, iBall invokes the equitable tolling doctrine. "'[G]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance[] stood in his way.'" *Barnes v. United States*, 776 F.3d 1134, 1150 (10th Cir. 2015) (alteration added) (quoting *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)).

But here, as shown by the state court litigation, iBall had knowledge of the alleged misappropriation at least by July 19, 2018. Thus, it is irrelevant that Defendants petitioned for nonpublication of their patent application. And while iBall argues in its Response that it made attempts, albeit unsuccessful, to investigate the secret patent filings, it does not allege any such investigation in the FAC.

Consequently, iBall's DTSA claim (Count 1) is dismissed with prejudice as time barred. *See Houser v. Feldman*, 569 F. Supp. 3d 216, 226 (E.D. Pa. 2021) (dismissing the plaintiff's DTSA claims with prejudice as it was clear from the face of the complaint that the statute of limitations had run); *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 460, 467 (S.D.N.Y. 2020), *aff'd*, 838 F. App'x 582 (2d Cir. 2020), *cert. denied*, 142 S. Ct. 311

(2021) (dismissing with prejudice the plaintiffs' DTSA claims where they were barred by statute of limitations and where further amendment would be futile).[9]

## B.     iBall's Correction of Inventorship Claims (Counts 2, 3, and 4)

### (1)     *Standard of Review for Rule 12(b)(1) Motions and Article III Standing*

"Federal courts are courts of limited jurisdiction" and may exercise jurisdiction only when specifically "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction takes one of two forms: a facial or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id.* In reviewing a facial challenge, a district court must accept the allegations in the complaint as true. *Id.*

---

[9] As evidenced above, the FAC represents iBall's second attempt to bring this claim. iBall also had the opportunity to amend after conferring with Defendants following the initial motion to dismiss, which was, in part, based on the 3-year statute of limitations barring the DTSA claim. *See* [Doc. Nos. 16–20]. Further, iBall has been on notice of Defendants' positions in the briefs, *see, e.g.*, Reply at 3 (arguing that iBall cannot use a response brief to bolster its FAC allegations or to cite facts not pled), since the conclusion of briefing in this case, and iBall never sought leave to amend. The Court does not act as an advocate for any party; rather, it acts only on a motion requesting leave and complying with Rule 7(b) and Local Civil Rule 15.1. Here, no proper motion has been made to the Court. *See Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 706 (10th Cir. 2014) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion.") (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)); LCvR15.1 (explaining that a party moving to amend a pleading must attach the proposed pleading as an exhibit to the motion). Moreover, although liberality in amendment is important to assure a party a fair opportunity to present one's claims, equal attention should be given to the idea that there must be an end to litigation and that parties must follow the rules. *Cf. Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994).

However, in a factual attack, the moving party may go beyond the allegations contained in the complaint and challenge the facts upon which subject-matter jurisdiction depends. *Id.*

Defendants' Motion does not identify whether they are making a facial or factual challenge to standing. The Court opts to consider the standing arguments as a facial challenge. It does so because the Settlement Agreement cited to by the parties is referred to in the FAC, is central to the FAC, and there is no dispute as to its authenticity. *See* [Doc. No. 26-1 at 14].

A federal court may hear cases only when the plaintiff has standing to sue. *See New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1164 (D.N.M. 2020). Standing's constitutional component arises "from Article III's requirement that federal courts hear only genuine cases or controversies." *See id.* Standing is a preliminary determination, and the burden of establishing standing rests on the party invoking federal jurisdiction. Here, that party is iBall. *See W. Watersheds Project v. Interior Bd. of Land Appeals*, 62 F.4th 1293, 1296 (10th Cir. 2023); *see also Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (explaining that Article III standing cannot be assumed and that the court must resolve issues of standing before it may reach the merits of an issue). To that end, iBall must "'allege . . . facts essential to show jurisdiction.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Further, "'[i]t is a long-settled principle that standing alone cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record.'" *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th

Cir. 1997) (quoting *FW/PBS*, 493 U.S. at 231 (internal quotation marks and citations omitted)).

"'Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"" *Shields Law Grp., LLC v. Stueve Siegel Hanson LLP*, 95 F.4th 1251, 1279 (10th Cir. 2024) (first quoting *Defs. of Wildlife v. Everson*, 984 F.3d 918, 944–45 (10th Cir. 2020); then quoting U.S. Const. art. III, § 2, cl. 1). Thus, to satisfy Article III's case or controversy requirement, a plaintiff must demonstrate standing by showing "'(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.'" *W. Watersheds Project*, 62 F.4th at 1296 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

## (2)     *Application to iBall's Correction of Inventorship Claims*

iBall asserts claims for correction of inventorship under 35 U.S.C. § 256 for the '301 Provisional Patent Application, the '820 Utility Application, the '501 Patent, and the '921 Continuation Application. Defendants assert that iBall lacks standing to pursue claims for correction of inventorship because iBall's ownership interest in the patent is contingent upon the success of its state law ownership claim. Defendants cite to *Larson v. Correct Craft, Inc.*, 569 F.3d 1319 (Fed. Cir. 2009) to support their position.

iBall alleges that Bright is "the sole inventor of the underlying Bloodhound Communications Trade Secrets" disclosed in the '301 Provisional Patent Application and is also an inventor of the '820 Utility Application, the '501 Patent, and the '921

Continuation Application by virtue of the '301 Provisional Patent Application being included in the subject matter of those subsequent applications. FAC ¶¶ 88, 91, 94. iBall alleges that "through omission, inadvertence, and/or error," Bright was not listed as an inventor in the applications and patent. *See id.* ¶¶ 89, 92, 95.

"[A] plaintiff seeking correction of inventorship under § 256 can pursue that claim in federal court only if the requirements for constitutional standing—namely injury, causation, and redressability—are satisfied." *Larson*, 569 F.3d at 1326. The Federal Circuit has "recognized that, in some circumstances, interests other than ownership may support Article III standing." *James v. J2 Cloud Servs., LLC*, 887 F.3d 1368, 1373 n.3 (Fed. Cir. 2018) (citing *Shukh v. Seagate Tech., LLC*, 803 F.3d 659, 663 (Fed. Cir. 2015) (recognizing a "concrete and particularized reputational injury" apart from ownership); *Chou v. Univ. of Chi.*, 254 F.3d 1347, 1359 (Fed. Cir. 2001) (recognizing a "concrete financial interest" apart from ownership).

Thus, to establish standing for a claim under 35 U.S.C. § 256, iBall must allege facts showing (1) an ownership interest in the patent, (2) a concrete financial interest in the patent, or (3) a concrete and particularized reputational injury arising from the omission as a named inventor in the patent. *Larson*, 569 F.3d at 1326–28; *James*, 887 F.3d 1373 n.3. Here, however, iBall does not allege "any benefit [it] would receive from being named as an inventor, or even as the sole inventor, separate from his claim to be the true owner of the ['501 Patent]." *See James*, 887 F.3d at 1373 n.3. iBall's standing, therefore, depends on an ownership interest in the patent. iBall relies on a provision in the Settlement Agreement, which assigned, among other things, "all intellectual and

intangible property of every type, including . . . patents, and inventions that were created, invented, developed, or improved through the Closing Date . . . ." [Doc. No. 26-1 at 20]. But the "Closing Date" was July 13, 2013, which was months before Defendants filed the '301 Provisional Patent Application for the TocBox Device and years before issuance of the patent. FAC ¶¶ 19, 39, 58. Thus, under iBall's allegations, Defendants could not have assigned iBall any ownership interest in the patent because it did not exist at that time.

Because iBall lacks an ownership interest in the patent, as pled, and because it does not allege that being declared the sole inventor would generate any other direct financial benefit, iBall lacks Article III standing to sue for correction of inventorship in federal court. Accordingly, the Court dismisses without prejudice iBall's correction of inventorship claims (Counts 2, 3, and 4).[10]

## C.     iBall's Invalidity of Patent Claim (Count 5)

Regardless of whether iBall's invalidity of patent claim is a claim arising under the Declaratory Judgment Act, 28 U.S.C. § 2201, or a standalone claim arising under separate authority, iBall must allege facts sufficient to support Article III standing. "[S]tanding is not dispensed in gross;" thus, a plaintiff must demonstrate standing for each claim and for each form of relief. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Just like suits for every other type of remedy, declaratory judgment actions must satisfy Article III's standing requirements. *See California v. Texas*, 593 U.S. 659, 672

---

[10] *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (explaining that a dismissal for lack of standing should be without prejudice).

(2021) (explaining that the Declaratory Judgment Act, on its own, "does not provide a court with jurisdiction"). In cases involving patent infringement or invalidity, "a federal district court must be guided by precedents of the Federal Circuit, which has exclusive appellate jurisdiction over patent law cases." *Nat'l Wastewater Sys., Inc. v. Smith*, No. CIV-10-1085-D, 2011 WL 1667478, at *2 (W.D. Okla. May 3, 2011) (citing 28 U.S.C. § 1295(a)(1) and *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 122 (2007)).

iBall fails to allege an actual case or controversy sufficient to confer Article III standing for its patent invalidity claim. *See AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*, 890 F.3d 986, 991 (Fed. Cir. 2018) (explaining that "[t]he existence of a patent, without more, does not create a case of actual controversy"; jurisdiction does not arise solely because a party learns of the existence of a patent owned by another, or even perceives such patent to pose a risk of infringement, without some affirmative action by the patentee). iBall alleges "no present infringement, no threat of or possibility of infringement litigation, and no meaningful preparation to infringe." *See id.* Thus, the requirements for justiciability are not met. *See id.* at 992. Accordingly, the Court dismisses without prejudice iBall's invalidity of patent claim (Count 5) for lack of standing.

**D.      Jurisdiction Over iBall's State Law Claims (Counts 6 and 7)**

Finally, the Court must assess its jurisdiction over iBall's remaining state law claims in Counts 6 and 7 for breach of contract and unjust enrichment. Here, the Court lacks diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and Counts 6 and 7 do not arise under federal law. *See* 28 U.S.C. § 1331; *see also* FAC ¶ 8 (alleging federal

question jurisdiction); [Doc. No. 5] ("Plaintiff has not invoked federal jurisdiction on the basis of diversity of citizenship [but instead] has invoked federal jurisdiction based upon federal claims under federal patent law."). Additionally, the relevant factors weigh against retaining supplemental jurisdiction over iBall's remaining state law claims now that all the federal claims have been dismissed. *See* 28 U.S.C. § 1367. Because there is no independent basis for subject-matter jurisdiction over Counts 6 and 7, and because the Court declines to exercise supplemental jurisdiction over iBall's state law claims, the Court will dismiss without prejudice Counts 6 and 7.

## III.   **CONCLUSION**

For these reasons, the Court GRANTS Defendants' Motion to Dismiss First Amended Complaint. [Doc. No. 23]. The Court DISMISSES WITH PREJUDICE iBall's Defend Trade Secrets Act claim (Count 1) under Rule 12(b)(6) as time barred. The Court DISMISSES WITHOUT PREJUDICE iBall's correction of inventorship claims (Counts 2, 3, and 4) and invalidity of patent claim (Count 5) under Rule 12(b)(1) for lack of standing. The Court declines to exercise supplemental jurisdiction over iBall's remaining state claims for breach of contract and unjust enrichment and DISMISSES WITHOUT PREJUDICE Counts 6 and 7.

IT IS SO ORDERED this 2nd day of August 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE